IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL NO. 1:19-CV-00007

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
v.                                 )
                                   )
APPROXIMATELY $13,205.54 IN U.S.   )          Claimants' Post-Trial Brief
CURRENCY SEIZED FROM RAHKIM        )
FRANKLIN ON AUGUST 21, 2018 IN     )
RUTHERFORD COUNTY, NORTH           )
CAROLINA,                          )
                                   )
                Defendant.         )
_____    )

I.     Introduction

        Although the Government's counsel called this "among the most

compelling" civil forfeiture cases he has seen, the evidence at trial unequivocally

failed to prove by a preponderance of the evidence that the Defendant Currency is

"proceeds traceable" to a Federal drug trafficking crime. After trial, the

Government's strongest arguments seem to be, essentially: (A) that, based on the

Government and law enforcement's non-existent investigation (and in spite of

Claimants' contrary evidence), Franklin's possession of the Defendant Currency

and his displays of wealth are unexplained, and Franklin's family living situation

and an 8-year-old arrest (not conviction) sufficiently connect Franklin to drug trafficking; (B) that Franklin's invocation of the Fifth Amendment in response to certain questions during discovery entitles the Government to an adverse inference against him, overriding all other evidence to the contrary; and (C) that Medrano's ownership of $8,000 of the Defendant Currency is simply implausible. However, the Government's evidence and arguments, on these topics and the others covered at trial, are neither persuasive nor sufficient.

II.    Argument

      A.    Franklin's possession of the Defendant Currency and his displays of wealth are not unexplained, nor does the Government's evidence show a connection between the Defendant Currency and drug trafficking.

In its Trial Brief, the Government quoted *United States v. 63,289.00 in U.S. Currency* for the proposition that "[w]here evidence of drug trafficking is presented alongside evidence of ill-gotten gains, the unexplained wealth ***may*** be traced to illegal drug proceeds."[1] *United States v. $63,289.00 in U.S. Currency*, No. 3:13-cv-00281-FDW-DCK, 2014 WL 296855 at *5 (W.D.N.C. July 2, 2014)

---

[1] The Government also quoted *$63,289.00* for the proposition that "[p]ossession of a large amount of cash is strong evidence of a connection to drug activity." However, this quote is misleading because it comes from a section of the opinion addressing whether the Government had proven that the currency at issue was "facilitation" property, in which the court analyzed the link between currency and a drug transaction the Government had already shown took place on the same day the currency was seized. *Id.*

(citing *United States v. Thomas*, 913 F.2d 1111 (4th Cir. 1990)) (emphasis added).

The full quote from *Thomas*, from which *$63,289.00* apparently draws this

statement, undercuts the Government position:

> where a defendant's verifiable income **cannot possibly** account for the level of wealth displayed and where there is **strong evidence** that the defendant is a drug trafficker, then there is **probable cause** to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds.

*Thomas*, 913 F.2d at 1114 (emphasis added).

Paraphrasing *Thomas*, the present matter is a case in which the credible,

unrebutted evidence of Franklin's income **can account** for the level of wealth

displayed, and where there is **at best weak evidence (and at worst no evidence)** of

a connection between the Franklin and drug trafficking. Thus, there can be no

probable cause, much less a preponderance of the evidence, tracing the Defendant

Currency to drug trafficking.

    1.    <u>Franklin submitted credible, unrebutted testimony regarding his sources of income, the nature of his displays of wealth on social media, and the presence of the Defendant Currency in his vehicle.</u>

At trial, Franklin testified to his sources of income, including an inheritance,

car detailing, insurance proceeds, buying and selling limited edition designer

clothing, breeding certain types of dogs, and his connections to the music industry.

His testimony credibly illustrated his familiarity with the workings of the industries

in which he operates, and the enthusiasm with which he pursues his business activities. The only specific rebuttal of Franklin's testimony on the topic of his income came from Officer Chavez-Perez, who claimed he frequently drove by the location of Franklin's car detailing shop and had not noticed any customers or activity there.

In response to the Government's presentation of several of his social media posts, Franklin testified that many of the objects in the photos are borrowed or merely props, that almost all of the designer clothing depicted in the photos were later sold for a profit, and that the posts themselves are specifically designed to depict a lifestyle that enhances his status in his community and enhances his business activities. The Government has argued that Franklin's testimony is implausible, but has offered no evidence or reasonable argument to contradict it.

Regarding the presence of the Defendant Currency in his vehicle at the time of the traffic stop, Franklin's testimony was substantiated by the SECU Statement of Credit Denial (Gov. Ex. 15) and evidence of Franklin's communications with a real estate attorney regarding the purchase of 2209 Ringtail Lane, consisting of text messages (Cl. Ex. 17), an email (Cl. Ex. 15), and a contract to purchase real property (Cl. Ex. 14). Franklin's testimony and evidence regarding 2209 Ringtail Lane was questioned, but ultimately remained unrebutted, by the Government.

Furthermore, the law enforcement agencies involved in this matter had an

opportunity to investigate Franklin's sources of income and his attempt to purchase 2209 Ringtail Lane, but apparently did not. For example, Sergeant Martin testified that he did not conduct any investigation after the search of Franklin's vehicle was complete, because Officer Chavez-Perez was in charge of the case. In turn, Officer Chavez-Perez testified that his investigation stopped at the same point, because he turned the case over to the DEA. The Government introduced no evidence from the DEA about what, if any, investigation it conducted. However, both Sergeant Martin and Officer Chavez-Perez testified that they had no knowledge of whether any attempt was made to search Franklin's two Apple iPhones (also seized at the traffic stop) for evidence of drug trafficking transactions. If any investigation was conducted at all, it somehow failed to locate the emails and text messages between Franklin and attorney Jana Jones regarding the purchase of 2209 Ringtail Lane, or the associated Contract (Cl. Ex. 14, 15, and 17). In short, the Government's arguments as to the implausibility of Franklin's testimony are undercut by law enforcement's own failure to investigate.

2.  The Government's evidence of past drug-related incidents involving Franklin is *at best* weak evidence (and *at worst* no evidence whatsoever) of a connection to drug trafficking.

The Government's evidence of past drug-related incidents involving Franklin included (a) Franklin's 2014 arrest at the Traveler's Inn Hotel, (b) an early 2015 incident during which Franklin was present when his brother was

arrested at the Franklin residence, (c) a late 2015 incident in which Franklin was arrested for possession of cocaine, (d) the fact that Franklin lives in his grandmother's home with his family members, some of whom are convicted drug traffickers, and (e) the presence of "marijuana shake"[2] in Franklin's vehicle during the 2018 traffic stop at which the Defendant Currency was seized.

Of these, the personal possession arrests are not relevant. *See United States v. Hall*, 858 F.3d 254, 267 (4th Cir. 2017) (holding that evidence of personal use of drugs was not relevant to show that a defendant engaged in the sale of drugs, because the two offenses are "of a wholly different order."). Therefore, only the 2014 Traveler's Inn Hotel arrest and Franklin's living situation could possibly show a link between Franklin and drug trafficking. However, for several reasons, even combined with the Government's other evidence and arguments, these are not adequate to prove more-likely-than-not that the Defendant Currency is proceeds of drug trafficking.

First, the 2014 arrest occurred over four years before the 2018 traffic stop at which the Defendant Currency was seized. Franklin testified that the charges against him were dropped, and that his brother admitted to his own guilt and was convicted in the incident. Franklin has not been accused of any drug trafficking

---

[2] For purposes of connecting Franklin to drug trafficking, Claimants submit that it is legally inconsequential whether Franklin is a user of illegal marijuana or a user of legal smokable hemp. *See Hall*, 858 F.3d at 267, quoted herein.

activity since that arrest. However, in three other arrests, including the 2018 traffic stop, Franklin was found to be in possession of a personal use quantity of drugs.

Because the charges against Franklin were dropped, and his brother admitted guilt, the 2014 arrest would be weak evidence of a connection between Franklin and drug trafficking even if it were closer in time to the seizure of the Defendant Currency. The large time span between the 2014 arrest and the 2018 traffic stop further weakens any possible connection. Finally, virtually all of the evidence between the 2014 arrest and the 2021 trial most reasonably supports an inference that Franklin is a mere user of drugs, not a trafficker.

Second, the only connection to drug trafficking shown by Franklin's living situation consists essentially of guilt by association—or worse, guilt by family. *See, e.g.*, *United States v. One Lot of United States Currency ($36,634)*, 103 F.3d 1048, 1054-1055 (1st Cir. 1997) ("Association with known criminals, without more, is, of course, not enough to establish probable cause."). In fact, contrary to the Government's view, it is reasonable to infer that Franklin would be more likely to be caught trafficking drugs, if he were engaged in such activity, given the relatively high profile of his household among law enforcement. Yet, since the 2014 arrest, the value of which is extremely limited, as discussed above, there is *no* evidence connecting Franklin to drug trafficking.

B.  <u>Franklin's invocation of the Fifth Amendment in response to certain questions during discovery supports, at most, a weak adverse</u>

inference.

The Government has argued that Franklin's invocation of the Fifth Amendment in response to certain questions in his deposition testimony and in response to a certain question in his written discovery responses entitles it to an adverse inference against him. However, as the Court has observed, if justified at all, an adverse inference is not a presumption, and it can be weak or strong. *See, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (holding that the "Fifth Amendment ***does not forbid*** an adverse inference against parties to civil actions…." (emphasis added)).

The circumstances of Claimant Franklin's invocation of the Fifth Amendment, and Franklin's testimony at trial, show that no significant adverse inference is justified in this case. At his deposition, Claimant Franklin first invoked the Fifth Amendment at the express instruction of his counsel, and then answered every similar subsequent question from the Government's counsel by asserting the Fifth Amendment, whether such an assertion was proper or not. Second, Claimant Franklin's specific invocations of the Fifth Amendment show that he did not have a good understanding of what is covered by the Fifth Amendment. *See* Gov. Ex. 89. Third, when questioned on the same "ultimate questions" of this case by his own attorney at his deposition, and again at trial, Franklin did not invoke the Fifth Amendment, but instead gave direct denials regarding any connection to drug

trafficking. Notably, at trial, counsel for the Government questioned Franklin on his deposition and written discovery responses, but declined to ask any specific questions regarding any connection to drug trafficking in front of the trier of fact.

C.    Medrano demonstrated her ownership of $8,000 as an innocent owner.

Medrano credibly testified that $8,000 of the Defendant Currency belonged to her, credibly testified as to how she acquired that money, and credibly testified that she has never been involved in drug trafficking. The Government failed to raise any reasonable inference from the evidence to discredit Medrano's testimony.

III.    Conclusion

The Government has failed to prove its claim to the Defendant Currency by a preponderance of the evidence. In short:

- The Government's argument that Franklin's income is unexplained is unpersuasive because law enforcement essentially undertook no investigation of Franklin's activity or income—e.g., no further investigation once law enforcement decided to keep the cash.

- The 2014 arrest is not probative because the charges against Franklin were dropped, someone else was convicted of the offense upon their own admission of guilt, over four years passed between that incident and the seizure of the Defendant Currency, over six years passed between that incident and trial, and virtually all of the other evidence shows that Franklin

is a mere user—not a trafficker—of drugs.

- No significant adverse inference is warranted regarding Franklin's assertion of the Fifth Amendment during discovery when he later answered the same ultimate questions in both his deposition and his trial testimony.

Even together with the Government's other evidence and arguments, these do not meet the Government's burden to prove more-likely-than-not that the Defendant Currency is proceeds of a drug trafficking crime.

Therefore, Claimants respectfully request entry of judgment in their favor, and against the Government.

Respectfully submitted this 14th day of May, 2021.

ALLEN STAHL & KILBOURNE, PLLC

/s/ James W. Kilbourne, Jr.
James W. Kilbourne, Jr.
Bar No.: 24354
jamesk@asklawnc.com

/s/ Jesse M. Swords
Jesse M. Swords
Bar No.: 52419
jswords@asklawnc.com

*Attorneys for Claimants*
20 Town Mountain Road, Suite 100
Asheville, NC 28801
828-254-4778 (main)
828-254-6646 (fax)