# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

### CIVIL NO. 1:19-cv-7-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| APPROXIMATELY $13,205.54 IN U.S. CURRENCY SEIZED FROM RAHKIM FRANKLIN ON AUGUST 21, 2018 IN RUTHERFORD COUNTY, NORTH CAROLINA, | ) ) ) ) ) |
| Defendant. | ) ) |

## GOVERNMENT'S POST-TRIAL BRIEF

The Government has established by a preponderance of the evidence that the Defendant Currency ("Currency") that Rahkim Franklin had on August 21, 2018 is drug proceeds subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Claimants failed to show that either of them is an "innocent owner" under 18 U.S.C. § 983(d).

### I. Civil Forfeiture Legal Framework

Pursuant to the Civil Asset Forfeiture Reform Act of 2000, the Government bears the initial burden of establishing by a preponderance of the evidence that the defendant property is forfeitable. 18 U.S.C. § 983(c)(1). To satisfy its burden, the Government may use evidence it acquired after filing its complaint, as well as

1

circumstantial evidence. 18 U.S.C. § 983(c)(2); *United States v. $94,200*, No. 1:11-cv-00609, 2012 WL 2885129, at *5 (M.D.N.C. July 13, 2012). To establish that currency is drug proceeds, the Government is not required to connect the currency to a specific drug transaction. *See, United States v. $200,000*, 210 F. Supp. 3d 788, 795 (M.D.N.C. 2016), *aff'd United States v. Phillips*, 883 F.3d 399 (4th Cir. 2018).

In evaluating the Government's case, "courts should not view each piece of evidence in isolation, but rather must 'consider the totality of the evidence as a whole and in the appropriate context.'" *United States v. Currency, U.S., $147,900.00*, 450 F. App'x 261, 263 (4th Cir. 2011) (citation omitted); *see also United States v. $63,289*, No. 3:13-cv-281-FDW, 2014 WL 2968555, at *5 (W.D.N.C. July 1, 2014) ("Whether the Government has met its burden is determined by a totality of the circumstances"). If the Government meets its burden, the burden shifts to the claimant to establish that he or she is an innocent owner. 18 U.S.C. § 983(d).

## II. The Government Carried Its Burden

### 1. The Government Is Entitled to an Adverse Inference

A court may draw an adverse inference against a party in a civil case who invoked the Fifth Amendment. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *United States v. $433,980*, 473 F. Supp. 2d 685, 692 (E.D.N.C. 2007). Franklin invoked the Fifth Amendment numerous times in discovery concerning his

involvement in drug activity, including at his deposition when asked whether the Currency was from the sale of illegal drugs.

At trial, Franklin admitted the invocations, but claimed that he was confused at his deposition. But the record reveals the lengths that the Government went to ensure that Franklin was not confused by the deposition questions. *See* Gov. Trial Ex. 89. Franklin also invoked the Fifth Amendment in interrogatory responses, including as to whether he has ever been involved in the sale of illegal drugs. *See* Gov. Trial Ex. 13, at 4. His attempt to offer contrary testimony at trial is a sham, and his counsel's attempt to diminish the invocations as the product of bad lawyering is unpersuasive. Franklin's assertion of the Fifth Amendment has consequences. The Government is entitled to an adverse inference that Franklin's responses to the questions that he refused to answer would have been against his interest. *See $433,980*, 473 F. Supp. 2d at 691-92 (adverse inference due to Fifth Amendment at deposition); *United States v. $112,061.00*, No. 14-cv-02823-KMT, 2016 WL 9443719, at *2-4 (D. Colo. Aug. 22, 2016) (same as to written discovery responses).

### 2. Franklin's Lack of Legitimate, Verifiable Income

The evidence at trial shows that a few hours before the traffic stop—before Franklin made a cash deposit of $9,500 into one of his bank accounts—he had more than $22,000 in cash in his vehicle. Although not dispositive, "[p]ossession of a large amount of cash is strong evidence of a connection to drug activity."

3

Case 1:19-cv-00007-MR-WCM   Document 87   Filed 05/14/21   Page 3 of 11

*$63,289.00,* 2014 WL 2968555, at *5. Lieutenant Timothy Martin testified that it is "very rare" in Forest City encounter an individual transporting $13,000 in cash.

As this Court recognized, "[a] person's reported income and work history can help determine if currency implicated in a forfeiture proceeding is connected to drug activities." Doc. 27, at 7 (citing *United States v. $174,206*, 320 F.3d 658, 662 (6th Cir. 2003)). Franklin has no verifiable employment. He asserts that he operates an auto detailing business, but he has no documentation for the business. He admits that he has never filed a tax return, and cannot estimate his annual income.

Franklin testified that he also earns money from breeding dogs and reselling clothing and accessories that he purchases at Neiman Marcus. This testimony was not credible; he admitted that he did not mention either of these purported sources of income at his October 2019 deposition or in his written discovery responses. Nor did he provide any documentation to corroborate his testimony, such as receipts or testimony from a witness to substantiate such claims.[1] This factor strongly favors the Government. *See $94,200*, 2012 WL 2885129, at *5 ("The mere allegation of a highly unlikely legitimate source of income without some support" is insufficient).

---

[1] As an example, Franklin testified at trial that he sold multiple pairs of shoes on "StockX" for over $200 and $400 profit. This appears to be an online platform for buying and selling shoes, yet he did not produce any documentation (a receipt, confirmation email or text, or screenshot) substantiating such sales.

4

### 3. Franklin's Unexplained Wealth is Evidence of Ill-Gotten Gains

Although Franklin claims to make less than the tax filing minimum, the evidence at trial revealed his lavish lifestyle. For example, three days after the seizure of the Currency, Franklin purchased a new truck for more than $55,000, and put more than $7,000 in cash down on the vehicle. In 2019, he purchased a second vehicle for approximately $28,000, putting down approximately $5,000-$6,000 in cash. His monthly car payments exceed $1,000.

In 2019, Franklin went to Greece and Mexico. In 2020, he traveled to Mexico, Italy, and the U.S. Virgin Islands. From August 29, 2018 through September 10, 2019, Franklin deposited approximately $45,000 in cash into his Wells Fargo checking account. *See* Gov. Trial Ex. 30, at 243-90. This figure excludes the $7,000 in cash that he used to purchase a new truck in August 2018, the $5,000-$6,000 in cash that he used to purchase a Honda in 2019, the $9,500 in cash that he deposited into his credit union account before the traffic stop, the $13,205.54 at issue, and the "cash stash" that he testified he stores in his safe. In other words, the record reflects that Franklin accumulated more than $80,000 in cash from undocumented sources during an approximately one-year period. This factor also

strongly supports the Government. *See $63,289.00*, 2014 WL 2968555, at *5 ("[u]nexplained wealth is formidable evidence of ill-gotten gains . . .").[2]

### 4. Claimants' Inconsistent Statements

Claimants have also made numerous inconsistent statements about the Currency. At the time of the traffic stop, Franklin indicated that the Currency totaled $8,000, and that all of it was his. Meanwhile, Medrano claimed that the Currency was hers, and that it totaled $14,000. A week later, Franklin filed a motion in state court claiming to be the owner of the Currency and seeking the return of his "personal property." *See* Gov. Trial Ex. 87. He did not mention Medrano. On October 5, 2018, Franklin filed a claim with DEA, asserting that he was the "owner" of the Currency. Gov. Trial Ex. 17, at 3.

Once the Government filed this action, Claimants' stories changed again. In their sworn claim dated February 7, 2019, Claimants assert that they are "joint owners" of the Currency. Gov. Trial Ex., at 1. Then, in interrogatory answers dated October 16, 2019, Medrano claimed that she was the owner of the Currency. Gov. Trial Ex. 20, at 3. Now, Medrano only claims $8,000 and Franklin claims the rest.[3] Furthermore, Franklin's testimony at trial was impeached numerous times

---

[2] Franklin also testified that he has several firearms, long recognized as being "tools of the drug trade." *See United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999).
[3] Franklin made inconsistent statements about what he was going to do with the money. In his DEA claim, Franklin stated that the traffic stop occurred when he

6

with his prior inconsistent statements. Claimants' inconsistent statements weigh heavily in favor of forfeiture. *See United States v. $67,040.00*, No. 5:14-cv-75, 2015 WL 1418039, at *6 (W.D.N.C. Mar. 27, 2015) ("[i]nconsistent and implausible answers . . . supports a link to illegal activity").

### 5. Franklin's History of Drug Activity

As this Court has recognized, "[a] claimant's record of drug activity is a highly probative factor in the forfeiture calculus." Doc. 27, at 6 (quoting *United States v. $67,220*, 957 F.2d 280, 286 (6th Cir. 1992)). This Court also observed that "it is possible that a person's 'history of involvement with illegal drugs,' *United States v. $147,900*, 450 F. App'x 261, 264 (4th Cir. 2011), or their 'contemporaneous affiliation with known drug traffickers,' *United States v. Ten Thousand Seven Hundred Dollars & No Cents*, 258 F.3d 215, 224 (3d Cir. 2001), can serve as evidence in a forfeiture proceeding." Doc. 27, at 6.

The evidence at trial demonstrates Franklin's history of involvement with illegal drugs and his affiliation with drug dealers. For example, Sergeant Mark McCracken testified about an incident at a hotel in August 2014 in which Franklin and his brother, Iykiemie, were in a room that contained more than three pounds of green marijuana in sealed bags, as well as digital scales. Lieutenant

---

was on the way to the bank to make a down payment for a house. Gov. Trial Ex. 17, at 6. At trial, Franklin testified that he was on his way to pay off his car.

Martin testified about an incident that occurred about a year later during which more than two pounds of green marijuana were found at a residence where Franklin was located. This evidence is probative of Franklin's involvement with illegal drugs.[4]

The above incidents occurred between two and four years before the traffic stop at issue. But it is well-settled that drug trafficking is a continuing enterprise. *See United States v. $98,699.60*, No. 5:13-cv-585-D, 2017 WL 750701, at *19 (E.D.N.C. Feb. 23, 2017) ("Although the drug conviction and drug transactions occurred years before the February 2013 seizure, drug trafficking is a continuing enterprise, and the evidence of Clark's involvement with illegal drugs is relevant . . . .") (citation omitted). Franklin also admitted that his brothers have sold drugs. Franklin does more than associate with drug traffickers; he lives with them. While one cannot necessarily choose one's family, Franklin's significant disposable income negates any argument that he has no choice but to live with his brothers.[5] This factor also favors the Government.

---

[4] Officer Scott Haynes also testified about a December 2015 incident during which Franklin exited his brother's residence twice within a short period of time, after which he fled from the police and was caught with 1.5 grams of cocaine. During a search of the residence, officers seized significant quantities of illegal drugs. Although 1.5 grams of cocaine might not be viewed as a trafficking amount, Franklin testified that he has never used cocaine, lending additional support to this evidence.

[5] Franklin's association with his brothers is particularly probative because he invoked the Fifth Amendment as to whether he has assisted his family members in the sale of illegal drugs. *See* Gov. Trial Ex. 89, at 155:8-14.

8

### 6. Positive K-9 Alert

A narcotics K-9 alerted to the cash that was in the center console of Franklin's vehicle. While the cash was located inside a vehicle that smelled strongly of marijuana, the K-9 alert is still entitled to weight. *See United States v. $110,873.00*, 159 F. App'x 649, 650 (6th Cir. 2005) (K-9 alert in similar situation).

### III. Claimants Failed to Carry Their Burden

Medrano's innocent owner claim is implausible. At the time of the traffic stop, she worked as a receptionist making approximately $20,000 a year. Despite having credit card and other debt, she claimed to accumulate $8,000 over a two-year period. Though she had checking and savings accounts at a bank, she testified that she stored the savings in a shoe box. She claims she gave Franklin "her life savings" the day before the traffic stop so that he could purchase a home in a city where she and her child did not live.[6] She did not know the price of the house or any other details.[7] She also cannot demonstrate that she is an "innocent owner" within the meaning of 18 U.S.C. § 983(d)(6). "If the claimant cannot establish that she has the required ownership interest, then her innocence is irrelevant." *United*

---

[6] Even though Medrano is a party to this case and claimed the $8,000 was her "life savings," she did not attend the second day of the trial.

[7] If the Court agrees with the Government that Medrano's claim is implausible, then such a finding also undermines the credibility of Franklin's claim, as he too maintains that Medrano gave him $8,000 of the Currency.

9

*States v. Munson*, 477 Fed. App'x. 57, 66-67 (4th Cir. 2012). Notably, "a person with only a general unsecured interest in" the property of another is expressly excluded from the definition of an "owner." *See* 18 U.S.C. § 983(d)(6)(B). Assuming *arguendo* that she gave Franklin $8,000, her testimony confirms that she relinquished ownership of the cash and is, at most, an unsecured creditor, because she confirmed that she had no expectation that the money would be returned.[8] Neither Claimant has satisfied their burden to show that they are an innocent owner.

## IV. Conclusion

Based upon the totality of the circumstances, the Government has established by a preponderance of the evidence that the Currency constitutes drug proceeds subject to forfeiture under 21 U.S.C. § 881(a)(6). Claimants have failed to carry their burden to show that either of them is an innocent owner under 18 U.S.C. § 983(d). The Government requests that the Court issue a judgment of forfeiture.

Respectfully submitted this 14th day of May, 2021.

---

[8] For this reason, the record does not support the existence of a bailment. *See Flexlon Fabrics, Inc. v. Wicker Pick-Up & Delivery Serv., Inc.*, 39 N.C. App. 443, 447, 250 S.E.2d 723, 725-26 (1979) (a bailment requires that there be an express or implied contract to take and *redeliver* the goods). As detailed in the Government's trial brief, Medrano's claim also fails because Franklin commingled the cash in the center console before he made his deposit of $9,500 at the credit union. *See* Doc. 67, at 24.

WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY

**s/Jonathan D. Letzring**
JONATHAN D. LETZRING
Assistant United States Attorney
Georgia Bar No. 141651
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone No. (828) 271-4661
Jonathan.Letzring@usdoj.gov


**s/Caroline B. McLean**
CAROLINE B. MCLEAN
Assistant United States Attorney
N.C. Bar No. 41094
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Telephone No. (828) 271-4661
Caroline.McLean@usdoj.gov

11