IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPROXIMATELY $13,205.54 IN U.S. | ) | CIVIL NO. 1:19-CV-00007-MR-WCM |
| CURRENCY SEIZED FROM RAHKIM | ) | |
| FRANKLIN ON AUGUST 21, 2018 IN | ) | |
| RUTHERFORD COUNTY, NORTH | ) | |
| CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MEMORANDUM IN SUPPORT OF
APPLICATION FOR ATTORNEYS' FEES
UNDER 28 U.S.C. § 2465(B)(1)(A)
ON BEHALF OF RAHKIM FRANKLIN AND SHELLY MEDRANO**

_____

NOW COME Claimants Rahkim Franklin ("Franklin") and Shelly Medrano ("Medrano") (collectively "Claimants"), through undersigned counsel, pursuant to Local Rule 7.1(c), and submit the following Memorandum in Support of their Application for Attorneys' Fees.

## A. CAFRA requires the Court to award attorneys' fees and other litigation costs to a successful claimant in a civil forfeiture action.

Section 4 of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified at 28 U.S.C. § 2465(B)(1)(A) states, in relevant part: "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for—(A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant." Clearly, this is a significant departure from the ordinary rule. *See, e.g., Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.").

Judge Fox of the Eastern District of North Carolina has explained the need for a fee shifting provision in these cases: "[a]sset forfeiture is a powerful tool in the Government's hands, made even more powerful by the fact that indigent claimants to seized property are typically not entitled to court appointed representation. Even otherwise non-indigent claimants may be unable to afford counsel, once the

Government has seized their bank accounts." *United States v.*
*$107,702.66 in United States Currency*, No. 7:14-CV-00295-F, 2016 U.S.
Dist. LEXIS 12211, at *2 (E.D.N.C. Feb. 1, 2016).

The House Committee on the Judiciary has described the
potential effects of civil forfeitures on innocent citizens thusly:

> Even should a property owner prevail in a civil forfeiture
> proceeding, irreparable damage may have been done to the
> owner's interests. For instance, if property is used as a
> business, its lack of availability for the time necessary to win
> a victory in court could have forced its owner into
> bankruptcy.  If the property is a car, the owner might not
> have been able to commute to work until it was won back.  If
> the property is a house, the owner may have been left
> temporarily homeless (unless the government let the owner
> rent the house back)…. [E]ven when the government's case
> is extremely weak, the owner must often settle with the
> government and lose a certain amount of money in order to
> get the property back as quickly as possible.

H.R. Rep. No. 106-192, at 17 (1999).

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L.
No. 106-185, 114 Stat. 202, was "designed to make federal civil
forfeiture procedures fair to property owners and to give owners
innocent of any wrongdoing the means to recover their property and
make themselves whole after wrongful government seizures." *Id.* at 11.
Congress recognized that challenges to civil forfeitures were rare, not

3

because of the merits of the claimant's defense to forfeiture, but rather, because of the difficulty claimants faced in overcoming the Government's nearly limitless legal resources. H.R. Rep. No. 106-192 at 14 (internal citations omitted).

As Judge Anderson of South Carolina has explained, "Congress intended CAFRA in part to allow better access to counsel in forfeiture cases." *United States v. 116,850 in United States Currency*, No. 3:14-CV-01794-JFA, 2016 U.S. Dist. LEXIS 198790, at *15 (D.S.C. June 13, 2016) *referencing* Louis S. Rulli, The Long-Term Impact of CAFRA: Expanding Access to Counsel and Encouraging Greater Use of Criminal Forfeiture, 14 Fed. Sent. R. 87, 90 (2001). "Congress sought to address the public outcry over the government's too-zealous pursuit of civil and criminal forfeiture, without expanding government liability respecting legitimate seizures of property plausibly subject to forfeiture." *United States v. Davis*, 648 F.3d 84, 97-98 (2d Cir. 2011), quoting *United States v. Khan*, 497 F.3d 204, 208 (2d Cir. 2007) (internal quotations omitted).

The Eighth Circuit further suggests that CAFRA was enacted "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their

property and make themselves whole after wrongful government seizures." *U.S. v. Bearden*, 328 F.3d 1011, 1012 (8th Cir. 2003).

Ultimately, CAFRA's intent is to improve access to attorneys' fee recovery by claimants. First, it broadens the class of claimants who can receive fees to those who "substantially prevail." *U.S. v. $60,201.00*, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003). Second, it declines to include a cap on the hourly rate an attorney can charge. *Id*. Third, it eliminates EAJA's "substantially justified" exception to payment of attorney fees. *U.S. v. $186,416.00 in U.S. Currency*, 642 F.3d 753 756 (9th Cir. 2011).

The Courts have analyzed entitlement to attorneys' fees, primarily relying on the Supreme Court's rationale regarding fee-shifting provisions found in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001). In *Buckhannon*, the Court held that prevailing party status requires an "alteration in the legal relationship of the parties." *Id*. at 605, 121 S. Ct. at 1840, 149 L.Ed.2d at 863. Thus, an enforceable judgment on the merits carries the necessary "judicial imprimatur" to convey prevailing party status, while a voluntary change in a party's conduct—despite being inspired by a lawsuit—does not. *Id*. In the case

5

at hand, the Claimants were forced to fight the forfeiture until they received a judgment on the merits.

CAFRA and other fee shifting statutes are intended to support "damages cases that lawyers would not take, not because they are too risky (the fee-shifting statutes should not encourage such suits to be brought), but because the damages likely to be recovered are not sufficient to provide adequate compensation to counsel…." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 483 U.S. 711, 726, 107 S. Ct. 3078, 3087, 97 L.Ed.2d 585, 598 (1987). Without compensation for attorneys, parties like the Claimants in this case "will be unable to secure the help that the statutes aimed to provide." *Id.* This case represents a suit that could not have been brought "because the damages likely to be recovered are not sufficient to provide adequate compensation to counsel." *Id.*

## B. The Court should confirm the Claimants' reasonable attorneys' fees.

As the Supreme Court has explained, the "request for attorneys'

fees should not result in a second major litigation."[1] *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). When settlement is not possible, the claimant bears the burden of establishing entitlement to and documentation of the appropriate hours and hourly rates. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) citing *Hensley*. *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891, 900 (1984). Further, the claimant's attorney should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. *Hensley* at 437, 103 S. Ct. at 1941, 76 L.Ed.2d at 53.

In the Fourth Circuit, the Courts use the lodestar analysis to determine an award of attorneys' fees. *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 73 (4th Cir. 1995). Under the lodestar method, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's

---

[1] Optimistically, the Supreme Court suggests that "Ideally, of course, litigants will settle the amount of a fee." *Hensley*, 61 U.S. at 437, 103 S. Ct. at 1941, 76 L.Ed.2d at 53.

services." *Hensley,* 461 U.S. at 433, 103 S. Ct. at 1939, 76 L.Ed.2d at 50.
In other words, attorneys' fees are determined by taking "the number of
hours reasonably expended on the litigation multiplied by a reasonable
hourly rate." *Trimper,* at 72 n.4 *citing Hensley*, 461 U.S. at 433, 103 S.
Ct. at 1939, 76 L. Ed. 2d at 50. *Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169, 174 (4th Cir. 1994) ("The starting point for establishing the
proper amount of an award is the number of hours reasonably
expended, multiplied by a reasonable hourly rate.")

A district court's discretion should be guided by twelve factors
when deciding what constitutes a reasonable number of hours.
*Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243-44 (4th Cir.
2009).[2] These twelve factors (sometimes referred to as the *Johnson*
factors) which guide the lodestar analysis include:

> The district court must look to the following factors to
> determine the reasonableness of an attorneys' lodestar: (1)
> the time and labor involved; (2) the difficulty and novelty of
> the issues; (3) the necessary legal skill required; (4) the
> attorneys' opportunity costs in pressing the instant
> litigation; (5) the customary fee; (6) the contingent nature of
> the fee; (7) the time limitations imposed by circumstances or

---

[2] The reasonable number of hours does not include "work performed
during the administrative forfeiture proceedings." *$116,850*, 166 F. Supp.
3d at 632.

the client; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*e.g., United States v. $116,850 in United States Currency*, 166 F. Supp. 3d 626, 632 (D.S.C. 2015); *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013), as amended (Jan. 23, 2014); *Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 73 (4th Cir. 1995); *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008); *Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987); *Barber v. Kimbrall's*, 577 F.2d 226 (4th Cir. 1978) (all applying 12-factor test originally set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

However, the court need not address all twelve factors independently, because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9, 103 S. Ct. at 1940, 76 L.Ed.2d at 51. *See also Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 376 (4th Cir. 1996) ("[T]he district court is under no obligation to go through the inquiry of those factors that do not fit.")

Attorney fee awards are within the discretion of the district court and are reviewed by higher courts for abuse of discretion. *McDonnell v. Miller Oil Co., Inc.,* 134 F.3d 638, 640 (4th Cir. 1998).

### 1. *The time and labor involved*

This case has spanned a period of three years and has been very hard fought on both sides. It involved an amended complaint [Doc 17], two separate motions to strike portions of the complaint and amended complaint [Doc 15, 23], a motion to dismiss for lack of subject matter jurisdiction [Doc 31], a motion for summary judgment [Doc 33], briefing on all of these issues, and, ultimately, a bench trial.

The Government filed a civil forfeiture after Franklin filed an administrative claim in response to the Government's administrative forfeiture of funds seized from Rahkim Franklin on August 21, 2018 in Rutherford County, North Carolina. The forfeiture was based on a contention that "The Defendant Currency is subject to forfeiture as 'proceeds' of illicit drug transactions." [Doc #95: Order, *Conclusions of Law*, at ¶3]. Even though the Government had the burden of establishing, by a preponderance of the evidence, that the defendant property is subject to forfeiture under 18 U.S.C. §983(c)(1), its argument

relied entirely on circumstantial evidence of alleged drug transactions.

The Government argued forfeiture was supported by several allegations: "Mr. Franklin's invocation of his Fifth Amendment right against self-incrimination; Mr. Franklin's lack of legitimate, verifiable income; Mr. Franklin's unexplained wealth; the Claimants' inconsistent statements regarding the ownership of the Defendant Currency; Mr. Franklin's history of drug activity; and the positive canine alert." [Doc #95: Order, *Conclusions of Law*, at ¶10].

By relying upon the totality of the circumstances rather than the discrete facts of an individual criminal act, the Government substantially increased the Claimant's litigation costs. Refuting each of the allegations required extensive discovery, significant briefing, substantial trial preparation, and excerpting of video recordings by counsel for the Claimants.

As evidence of the time and labor involved in this matter, the Court used 199 numbered paragraphs to outline the factual issues from stipulation and trial. The final memorandum and order were issued by the Court nearly 10 months after the completion of the trial evidence. [Doc #95: Order].

Counsel for the Claimants have outlined the time and labor involved in the attached Affidavits.

## 2. *The difficulty and novelty of the issues*

While various reported cases use circumstantial evidence and the totality of the circumstances to support a finding that seized currency is proceeds of illicit drug activity, none of those cases involve issues that are as difficult, novel and circumstantial as the issues in this case.

"As for the novelty and difficulty of the questions raised, the Court notes that this case presented unusual and complex issues that, until the present case was filed, had not been extensively litigated in federal court. The novelty and difficulty of the issues in this case weigh in favor of a substantial fee." *Hogan v. Cherokee Cty.*, No. 1:18-cv-00096-MR-WCM, 2022 U.S. Dist. LEXIS 30946, at *20 (W.D.N.C. Feb. 21, 2022).

Among the novel issues in this case are the lack of conviction of the Claimants for a drug trafficking offense, the testimony that legal hemp rather than marijuana created the alleged reasonable suspicion for the search, the expected use of the funds to purchase real property, and the source of the funds earned in non-traditional commerce.

### 3. *The necessary legal skill required*

The Government's arguments were not simple to refute, and success in this case required a very specific set of legal skills. Because this case involved interplay of state criminal law, federal criminal law, civil forfeiture law, civil procedures, and complex discovery, the full set of legal skills required to successfully litigate this case is possessed by few.

In this particular case, considerable skill was required to develop and analyze the evidence and to present that evidence in an orderly and efficient manner at trial. *See Norwood v. Charlotte Memorial Hosp. and Medical Center,* 653 F. Supp. 1350, 1354 (W.D.N.C. 1987), *vacated in part,* 829 F.2d 1120 (4th Cir. 1987). There were a number of specific factual challenges in this case, including Mr. Franklin's prior arrests, unreported income, and non-traditional business activities. Legal skill was required to present evidence and extract testimony that explained Mr. Franklin's unusual employment. The Court perfectly understood the testimony and evidence presented as demonstrated by the Order:

> *68.* Mr. Franklin engages in a number of cash-only money-making activities, including car detailing, dog breeding, and reselling luxury

13

items and clothes that he purchases with a Neiman-Marcus credit card. [T. 61-76, 90].

69. Mr. Franklin does not know what his annual income is, and he does not file tax returns. [T. 29].

70. Mr. Franklin uses social media and his connection to rappers in the hip-hop community to depict a lifestyle that enhances his status in the community and promotes his business activities. [T. 62-77].

71. For example, Mr. Franklin frequently posts photos on social media depicting him wearing luxury items, posing with motorcycles and automobiles, displaying firearms, and traveling to various locales, such as Greece, Italy, and Mexico. [T. 79].

72. Mr. Franklin admitted that many of the items depicted in these posts are borrowed or merely props, and that almost all of the designer clothing depicted in the photos were later sold for a profit. [T. 62-77].

[Doc #95: Order, *Findings of Fact*, at 11-12.]

Ultimately, the Claimants were represented by three experienced attorneys at various times during the litigation. Each of these attorneys used their legal skills to obtain the ultimate result.

### 4. The attorneys' opportunity costs in pressing the instant litigation

Under the relevant factors, an "attorneys' opportunity costs

include the higher rates they would have otherwise charged in other cases and projects." *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010).

The firm and the individual attorneys suffered from significant lost opportunity costs in order to continue the representation of the Claimants. This litigation took more than 3 years from start to finish, with a significant delay caused in part by COVID-19 pandemic-related issues.

Further, as Courts have explained, "[i]n setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." *Missouri v. Jenkins*, 491 U.S. 274, 282, 109 S. Ct. 2463, 2468, 105 L.Ed.2d 229, 239 (1989), citing *Del. Valley Citizens' Council for Clean Air*, 483 U.S. at 716, 107 S. Ct. at 3081-82, 97 L.Ed.2d at 592. *See Sierra Club v. EPA*, 248 U. S. App. D. C. 107, 120-121, 769 F. 2d 796, 809-810 (1985); *Louisville Black Police Officers Organization, Inc. v. Louisville*, 700 F. 2d 268, 276, 281 (6th Cir. 1983).

Courts have seen the costs of extended litigation as a key factor in

determining the lodestar. "When plaintiffs' entitlement to attorneys'

fees depends on success, their lawyers are not paid until a favorable

decision finally eventuates, which may be years later, as in this case.

Meanwhile, their expenses of doing business continue and must be met.

In setting fees for prevailing counsel, the courts have regularly

recognized the delay factor, either by basing the award on current rates

or by adjusting the fee based on historical rates to reflect its present

value." *Del. Valley Citizens' Council for Clean Air*, 483 U.S. at 716, 107

S. Ct. at 3081-82, 97 L.Ed.2d at 592.

Robert Dungan began as initial lead counsel, but was unable to

complete representation of the Claimants because of his involvement in

a complex arbitration during the period that the matter was ultimately

scheduled for trial. James Kilbourne took over as lead counsel, with

Jesse Swords joining the team as second chair for the trial.

The hours spent in litigating this matter and in preparation for

trial resulted in limited availability to complete work for other clients.

Yet the Firm continued to pay the costs of doing business while

awaiting the decision. The Itemized Statement of Time Expended

reflects the current billing rate for each of the attorneys who

16

participated in this litigation as the lodestar rate for each.

## 5. *The customary fee*

"In addition to the attorneys' own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Robinson*, 560 F.3d at 244 citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). The Court may also rely upon its own knowledge and experience of the relevant market in determining a reasonable rate. See *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994) ("[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate."). Ultimately, the fee inquiry must rely upon the market rate. *Robinson*, 560 F.3d at 244. ("Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.")

There is no customary fee for the trial of a federal civil forfeiture. Such representation is ordinarily conducted at an hourly rate. The

hourly fee shown in the counsel's affidavits are the typical and standard hourly rates currently billed to clients by the Attorneys.

In addition to the affidavits of the counsel for the Claimants, the movants will provide affidavits from other local counsel opining to the reasonableness of the rates in this matter.

The Court may also consider professional surveys, in determining the reasonableness of billing rates. *MCI Healthcare, LLC v. Mountainside Sols., Inc.*, Nos. 1:18-cv-00315-MR, 2021 U.S. Dist. LEXIS 134515, 2021 WL 3081063 (W.D.N.C. July 20, 2021). One such survey is the Legal Service Index-Adjusted Laffey Matrix, which is a matrix of rates for attorneys at various experience levels based on an analysis of market rates in the District of Columbia for complex federal litigation. See *Laffey v. Northwest Airlines, Inc.*, 241 U.S. App. D.C. 11, 746 F.2d 4, 24-25 (D.C. Cir. 1984), overruled in part on other grounds by *Save Our Cumberland Mountains, Inc. v. Hodel*, 273 U.S. App. D.C. 78, 857 F.2d 1516 (D.C. Cir. 1988) (*en banc*). The Laffey Matrix can be adjusted for local costs using the Bureau of Labor Statistics data on wages paid to lawyers (occupation code 23-1011) and paralegals (occupation code 23-2011) for primary metropolitan statistical areas in each state.

Applying the Legal Service Index-Adjusted Laffey Matrix for 2020-21 to the average attorney and paralegal wages for Asheville metro area[3] as shown by Bureau of Labor Statistics Information (https://www.bls.gov/oes/current/oes_11700.htm) the Firm's current rates appear reasonable:

| Years out of law school | Laffey Matrix (DC) 2020-2021 | Laffey Matrix (AVL) 2020-2021 |
|---|---|---|
| 20+ years | $914.00 | $511.36 |
| 11-19 years | $759.00 | $424.64 |
| 8-10 years | $672.00 | $375.97 |
| 4-7 years | $465.00 | $260.15 |
| 1-3 years | $378.00 | $211.48 |
| Paralegals & Law Clerks | $206.00 | $115.25 |

## 6. *The contingent nature of the fee*

The Firm did not enter into a traditional contingent fee with the Claimants. The Claimants lacked the resources to afford the cost of litigation to recover the funds seized from them, and the seized funds in

---

[3] According to the Bureau of Labor Statistics, Asheville attorney wages are 55.9% of the wages for Washington, DC, while paralegal wages are 59.2% of Washington wages.

question were insufficient to allow for compensation. Therefore, the fee agreement entered with the Claimants provided that the Firm would only be compensated by the CAFRA fee award.

The lodestar can be minimally adjusted for this purpose. As the Supreme Court explains, "We deem it desirable and an appropriate application of the statute to hold that if the trial court specifically finds that there was a real risk-of-not-prevailing issue in the case, an upward adjustment of the lodestar may be made, but, as a general rule, in an amount no more than one-third of the lodestar. Any additional adjustment would require the most exacting justification." *Del. Valley Citizens' Council for Clean Air,* 483 U.S. at 730, 107 S. Ct. at 3089, 97 L.Ed.2d at 601.

The Court further explains, "whatever the risk of winning or losing in a specific case might be, a fee award should be informed by the statutory purpose of making it possible for poor clients with good claims to secure competent help. Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.*

Based on the facts of the case and the amount in dispute, the Claimants would have been unable to find counsel who was willing to undertake the significant risk of this case and the lodestar should be adjusted for this risk enhancement by counsel.

### 7. *The time limitations imposed by circumstances or the client*

Because of the nature of a Federal civil forfeiture, the Claimants had to act quickly to respond to the lawsuit filed by the Government to preserve their right to recovery. The litigation to completion took a significant period of time, but timing for each stage of the litigation was suppressed.

### 8. *The amount in controversy and the results obtained*

As noted by the Supreme Court, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (internal quotations omitted). By this measure, counsel for the Claimants were entirely successful.

There is absolutely no suggestion in CAFRA that attorneys' fees are limited by the amount in controversary. In fact, CAFRA suggests

the exact opposite conclusion. The fee shifting provision was enacted "to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." *Bearden*, 328 F.3d at 1012.

In addition, while the amount in controversy in this matter was significantly less than the attorneys' fees and costs expended to recover it, it represented the life savings of the Claimants at the time it was seized.

Contrary to the policy represented by CAFRA, limiting the recovery of attorneys' fees based on a "low" amount in controversy would not only increase the potential for government abuse through civil forfeiture of amounts considered insignificant compared to the cost of litigation.

Finally, limiting the attorneys' fees based on the amount in controversy would be out of sync with the Government's own aggressive and unrelenting treatment of this matter—the Government was in control of this litigation at all times and pursued it through multiple phases of litigation, and ultimately through trial.

### 9. *The experience, reputation, and ability of the attorneys*

Two of the attorneys have significant experience in forfeiture cases in Federal Court, having served as one of the lead counsels in one of the most complex forfeitures in Federal District Court, *United States v. Bailey*, 926 F.Supp.2d 739 (W.D.N.C. 2013).  The attorneys have been recognized locally and statewide for leadership in the legal profession and have received various awards and recognition of their legal skill. The Court is personally familiar with the experience, reputation, and ability of the Attorneys.

### 10.    *The "undesirability" of the case*

A federal forfeiture such as this matter carries the stigma of defending one who has been accused of drug dealing by the Federal Government.

Further, rare is the law firm that would even consider the case, much less one that would carry it to a favorable verdict at trial,[4] even with the fee-shifting provision of the CAFRA. Although CAFRA's fee-shifting provisions are strong, they are no guarantee, meaning that a

---

[4] The counsel's representation of the Claimants in this case has been described as quixotic.

civil forfeiture matter is a risky economic proposition for a law firm, especially in the matter at hand given the relatively low amount in controversy and the significant costs of litigating against the Government's nebulous legal theories. *See Fisher*, 948 F.3d at 603 ("no rational attorney would take on these cases unless she were doing so essentially pro bono.").

### 11.      *The nature and length of the professional relationship with the client*

The Defendant was a client of a former associate of the Firm, which led to the referral of the matter. There was no past representation or expected future representation of the Claimants by the Firm.

### 12.      *Awards in similar cases.*

Other cases have led to the award of fees in the amount of the lodestar (as a reasonable hourly rate) for a reasonable number of hours. As this court explained, "reasonable hourly rates are determined by reference to the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *United States v. 23,400.00 in United States Currency*,

No. 1:05CV310, 2007 U.S. Dist. LEXIS 26042, at *11 (W.D.N.C. Apr. 9, 2007) (ellipses omitted).

## CONCLUSION

Based on the affidavits, arguments and evidence before the Court, the Claimants submit that the initial lodestar rates in this case should be set as follows:

| Attorney | Rate |
|---|---|
| Robert Dungan | $375.00 |
| James W. Kilbourne, Jr. | $375.00 |
| Jesse Swords | $275.00 |
| Paralegals and Legal Assistants | $150.00 |

We believe that this initial lodestar should be adjusted upward one-third of the lodestar for risk assumption.

The Claimants further submit that the reasonable number of hours at a reasonable lodestar rate yields reasonable attorneys' fees under 28 U.S.C. § 2465(B)(1)(A) in the amount of one hundred, seventy-five thousand, three hundred, ninety-five dollars ($175,395.00), along with other litigation costs reasonably incurred in the amount of five

thousand, one hundred, fifty-six dollars and thirty-seven cents ($5,156.37).

After adjustment for risk assumption, the Claimants request an award of attorneys' fees in the amount of two hundred and thirty-three thousand, eight hundred fifty-nine dollars and ninety-four cents ($233,859.94).

Respectfully Submitted, this the 24th day of May, 2022.

ALLEN STAHL & KILBOURNE, PLLC

/s/James W. Kilbourne, Jr.
Bar Number: 25354
E-mail: jamesk@asklawnc.com

Attorney for the Claimants
Twenty Town Mountain Road
Asheville, NC  28801
(828) 254-4778