# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:19-cv-00007-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | <u>MEMORANDUM OF</u> |
| ) | <u>DECISION AND ORDER</u> |
| APPROXIMATELY $13,205.54 IN U.S. ) | |
| CURRENCY SEIZED FROM RAHKIM ) | |
| FRANKLIN ON AUGUST 21, 2018 IN ) | |
| RUTHERFORD COUNTY, NORTH ) | |
| CAROLINA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Application for Attorneys'

Fees under 28 U.S.C. § 2465(b)(1)(A) on Behalf of Rahkim Franklin and

Shelly Medrano. [Doc. 98].

## I.   BACKGROUND

This civil forfeiture action was brought against $13,205.54 seized from

Rahkim Franklin during a traffic stop on August 21, 2018.  On January 7,

2019, the Government filed its Complaint, asserting that the Defendant

Currency was subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because

it constituted money furnished or intended to be furnished in exchange for a

controlled  substance,  was  drug  proceeds,  and/or  was  money  used  or

intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846. [Doc. 1].

On February 7, 2019, Claimants Rahkim Franklin and Shelly Medrano filed a verified "Joint Claim of Ownership" with respect to the Defendant Currency. [Doc. 5]. Thereafter, the Claimants filed a Motion to Strike portions of the Complaint [Doc. 15], which was denied as moot when the Government filed an Amended Complaint [Doc. 17]. [See Text-Only Order June 4, 2019]. The Claimants then filed a Motion to Strike portions of the Amended Complaint, asserting the same grounds. [Doc. 23]. On September 30, 2019, the Court denied this motion. [Doc. 27].

In January 2020, the Claimants filed a Motion to Dismiss for Lack of Jurisdiction, challenging the Court's subject matter jurisdiction on several grounds. [Doc. 31]. On February 28, 2020, the Court denied the Claimants' Motion to Dismiss, finding all of the Claimants jurisdictional arguments to be without merit. [Doc. 43].

Following a period of discovery, the Government moved for summary judgment, which was denied. [Doc. 33; Text-Only Order March 2, 2020].

The case was originally scheduled for trial during the May 2020 trial term but had to be continued due to the ongoing COVID-19 pandemic, as well as because of a scheduling conflict that counsel for the Claimants had.

[Text-Only Order Apr. 2, 2020; Docs. 47, 73].  The case proceeded to a two-day bench trial beginning on May 6, 2021.  On March 16, 2022, the Court issued its Findings of Fact and Conclusions of Law, dismissing the Government's Complaint and declaring the Claimants to be the rightful owners of the Defendant Currency.  [Doc. 95].  The Clerk entered Judgment that same day.  [Doc. 96].

The Claimants now move for an award of attorneys' fees and costs pursuant to Section 4 of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 28 U.S.C. § 2465(b)(1)(A).  [Doc. 98].  While the Government does not dispute that the Claimants are "prevailing parties" and thus eligible for an award of reasonable attorneys' fees under CAFRA, the Government contends that the Claimants' fee request is excessive and unreasonable and therefore should be significantly reduced.  [Doc. 117].

## II.    DISCUSSION

CAFRA provides, in pertinent part, as follows: "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for . . . reasonable attorney fees and other litigation costs reasonably incurred by the claimant." 28 U.S.C. § 2465(b)(1)(A).  As noted previously, it is undisputed that the Claimants "substantially prevailed" in this action.

3

In the Fourth Circuit, the lodestar analysis applies to an award of attorneys' fees.  See Trimper v. City of Norfolk, Va., 58 F.3d 68, 73 (4th Cir. 1995).  Under the lodestar method, an award of reasonable attorneys' fees is  determined by taking "the number of hours reasonably expended, multiplied by a reasonable hourly rate."   Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994).   The burden is on the fee applicant to justify the reasonableness of the requested fee.  See Blum v. Stenson, 465 U.S. 886, 897 (1984).

In exercising its discretion in the application of this lodestar method, the Court is guided by the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)).  "Although the Court

4

considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable."[1] <u>Firehouse Restaurant Group, Inc. v. Scurmont LLC</u>, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing <u>EEOC v. Service News Co.</u>, 898 F.2d 958, 965 (4th Cir. 1990)).

## A. Upward Adjustment

As a preliminary matter, the Court will address the Claimants' argument that because there was a significant risk of not prevailing in this case, an upward adjustment of the lodestar in an amount no more than one-third would be appropriate to compensate for the assumption of risk by the attorneys.  [Doc. 98 at 7].

The Claimants assert that their initial lodestar calculation of $175,395.00 in attorneys' fees should be adjusted upward by one-third due to the attorneys' assumption of the risk.  With that upward adjustment, the Claimants request a total of $233,859.94 in fees.  [Doc. 99 at 19-20, 25-26].

The Supreme Court has stated that the lodestar amount "is presumed to be the reasonable fee . . . and enhancement for the risk of nonpayment

---

[1] In opposing the Claimants' fee request, the Government focuses primarily on the factors of the time and labor expended and the customary fee.  Nevertheless, the Court will endeavor to each of these factors as they are applicable.

5

should be reserved for *exceptional cases* where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987) (plurality opinion) (emphasis added). The Supreme Court has also emphasized that "there is a 'strong presumption' that the lodestar is reasonable," and that this presumption may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 553-54 (2010).

The Claimants have failed to demonstrate that this case is exceptional such that a reasonable lodestar calculation is insufficient to take into account the risk associated with pursuing this matter. The Claimants have not offered any analysis or evidence to justify an enhancement of the lodestar apart from their argument that they risked recovering nothing, which itself confirms that the lodestar figure itself properly accounts for any risk assumed by the Claimants' counsel. For these reasons, the Claimants' request for an upward adjustment of the lodestar is denied.

### B. Time and Labor Expended

The Court begins its lodestar analysis with considering the time and labor expended by the Claimants' attorneys. "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" Doe v. Kidd, 656 F. App'x 643, 656 (4th Cir. 2016) (quoting in part Hensley, 461 U.S. at 434).

The Claimants were represented by the firm of Allen Stahl & Kilbourne, PLLC, of Asheville, North Carolina. Four attorneys from that firm have appeared in this case for the Claimants. The initial verified claim was filed by Robert E. Dungan and James W. Kilbourne, Jr., who are both partners. Shortly before trial, associate attorney Jesse M. Swords filed a notice of appearance on behalf of the Claimants. Post-trial, associate attorney Hannah Michalove made a notice of appearance on behalf of the Claimants. In addition to these attorneys of record, the billing records presented by the Claimants reflect the work of two other attorneys in the firm, Megan Farley and Olivia Pesterfield, as well as a total of eight paralegals. [See Doc. 99-3]. The Claimants assert that they incurred

7

attorneys' fees for 495.6 hours[2] of attorney legal work and 57.2 hours of paralegal work, totaling fees in the amount of $175,395.00, along other litigation costs in the amount of $5,156.37. [Doc. 99-3].

The Government objects to the time and labor expended on this case, arguing that this case was overstaffed by attorneys and paralegals, resulting in excessive and unnecessary hours and inefficiency. Specifically, the Government contends that there were duplicative hours spent on the summary judgment response; that there were excessive and unnecessary hours spent on the Claimants' motions to strike and motion to dismiss; that excessive hours were spent on the trial brief; that excessive and unnecessary hours were spent preparing the directed verdict motion; that excessive hours were spent on the untimely fee petition; and that time spent by the attorneys on courthouse technology training should not be included in the fee award. [Doc. 117].

---

[2] According to counsel's billing records, the following hours were expended: (1) Dungan – 126.1 hours; (2) Kilbourne – 192.4 hours; (3) Swords – 156.4 hours; (4) Farley -- .5 hours; (5) Michalove – 15.0 hours; and (6) Pesterfield – 5.2 hours. [Doc. 99-3 at 30-31].

8

### 1. Summary Judgment Response

The Government first objects to the time spent by counsel in responding to the Government's motion for summary judgment. [Doc. 117 at 11-12].

According to the billing records submitted by the Claimants, Mr. Dungan spent more than 23 hours between January 20, 2020 and January 30, 2020 drafting a response to the Government's motion. [Doc. 99-3 at 13]. On January 31, 2020, Mr. Kilbourne then worked on the brief for more than 14 additional hours, explaining in a billing entry that the response "need[ed] to be extensively rewritten at deadline." [Id. at 14].

The Court finds that spending 37 hours on a response brief is excessive, especially where more than half of these hours were expended by a partner on work product that had to be "extensively rewritten" by another partner. A claimant is not entitled to recover fees for duplicative attorney time. See Rum Creek Coal Sales, Inc., 31 F.3d at 180 ("we have also been sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified by the contributions of each attorney"). Accordingly, 23 of the hours expended on the summary judgment response brief will be excluded from the fee award.

### 2. Claimants' Pretrial Motions

The Government next moves to exclude any hours related to the filing of the Claimants' pretrial motions. [Doc. 117 at 12-13]

A prevailing party is only entitled to recover fees for time productively spent. See Hensley, 461 U.S. at 434 (noting that court may adjust the hours claimed to eliminate time that is "excessive, redundant, or otherwise unnecessary"); United States v. One Star Class Sloop Built in 1930 with Hull number 721, Named "Flash II", 546 F.3d 26, 39 (1st Cir. 2008) ("time invested in issues that are litigated profligately, unnecessarily, or without benefit to the prevailing party may be disallowed").

Here, the Claimants filed motions to strike allegations in both the Complaint and the Amended Complaint. [Docs. 16, 24]. The allegations that the Claimants sought to strike related to prior drug-related incidents involving Mr. Franklin, as well as an allegation concerning his lack of legitimate income. The motions to strike relied primarily on a citation to one inapposite employment discrimination case. [Doc. 24 at 6]. The Court denied the motion to strike, rejecting the Claimants' arguments.[3] [Doc. 27].

---

[3] The Claimants' original Motion to Strike was denied as moot upon the filing of the Amended Complaint. The Motion to Strike directed to the Government's Complaint raised essentially the same grounds as in the Motion to Strike the Government's Amended Complaint. [See Docs. 16, 24].

According to the billing records, Mr. Dungan spent 6.5 hours and the firm's paralegals spent 2.8 hours on these motions to strike. [Doc. 99-3 at 3, 4, 7]. These motions were meritless, and the Court finds that the hours expended on them should be excluded.

On January 13, 2020, Claimants filed a motion to dismiss this action, asserting that the Court lacked subject matter jurisdiction because: (1) state drug charges were never brought against Franklin in connection with the traffic stop; (2) the Rutherford County District Court obtained jurisdiction before the federal adoption; and (3) DEA never had physical control over the actual currency seized in the case. [Doc. 32]. On February 28, 2020, the Court denied the motion, concluding that it was "without merit." [Doc. 43 at 14].

According to the billing records submitted by the Claimants, counsel spent approximately 28.4 hours of attorney time (23.6 for Mr. Dungan and 4.8 for Mr. Kilbourne) pursuing this failed motion to dismiss, along with approximately 6.5 hours of paralegal time. [Doc. 99-3 at 3,7, 12-13]. This motion, however, lacked legal support and had no realistic chance of success. Accordingly, the Court will also exclude hours related to the filing of this motion to dismiss.

11

### 3. Trial Brief

The Government argues that the time spent by the attorneys to prepare the trial brief was excessive. [Doc. 117 at 13-14].

The billing records submitted by counsel for Claimants indicate that Mr. Kilbourne and Mr. Swords spent more than 37 hours of attorney time in preparing their trial brief.  [See Doc. 99-3 at 18-19].  The Court finds that this was an excessive amount of time to devote to a trial brief in this case, particularly in light of the fact that the Claimants had previously filed a response to the Government's motion for summary judgment that addressed many of the same issues discussed in the trial brief.  The Court will therefore reduce Mr. Swords' time by ten (10) hours and Mr. Kilbourne's time by eight (8) hours.

### 4. Directed Verdict Motion

Next, the Government contends that the Claimants' counsel spent excessive and unnecessary hours preparing a written directed verdict motion.  [Doc. 117 at 14].

Counsels' billing records indicate that attorney Jesse Swords spent 11.1 hours preparing a written motion for judgment as a matter of law under Fed. R. Civ. P. 52(c).  [Doc. 99-3 at 23-24].  This motion, however, was never filed with the Court.  Rather, at the conclusion of the Government's case-in-

12

chief, Mr. Swords made an oral motion under Fed. R. Civ. P. 52(c), which the Court rejected. The Court finds that spending more than 11 hours to prepare a Rule 52(c) motion that was never filed is excessive and unreasonable.[4]   Accordingly, the Court will reduce Mr. Swords' time associated with this task by eight (8) hours.

### 5.   Fee Petition

Next, the Government objects to the amount of time spent by the attorneys preparing the fee petition. [Doc. 117 at 14-15].

The billing records submitted by Claimants indicate that Mr. Kilbourne and Mr. Swords spent approximately 22 hours of attorney time on the fee petition. [Doc. 99-3 at 28-30]. This is an excessive and unreasonable amount of time to devote to preparing a fee petition, particularly in light of the fact that Claimants' motion for attorneys' fees was untimely and was only considered upon a showing of excusable neglect. [See Doc. 116]. Moreover, the fee petition is not being pursued for the benefit of the

---

[4] The Claimants object to any reduction of these hours, arguing that at least 6 of those hours also included "Review of file materials in preparation of Trial," and therefore the amount of time spent on the written motion was not excessive. [Doc. 119 at 5]. The entries to which the Claimants refer, however, are classic examples of "block billing," which is not favored and also merits a reduction in these hours. See Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017) ("Because of the obligation to maintain billing records with sufficient detail that the court may review and determine the reasonableness of individual activities, block billing entries are disfavored in attorney's fees award cases.").

Claimants or to vindicate their rights, but rather for the benefit of the attorneys. Accordingly, the Court will reduce Mr. Kilbourne's time on this task by fifteen (15) hours and Mr. Swords' time by two (2) hours.

### 6. Courthouse Technology Training

The Government further objects to time billed for courthouse technology training prior to trial. [Doc. 117 at 15-16]. Counsels' billing records indicate that Mr. Kilbourne spent .7 hours and Mr. Swords spent .8 hours on courthouse technology training for which they now seek compensation. This task was administrative in nature and therefore should be eliminated from any award of attorneys' fees. See Hensley, 461 U.S. at 434 (stating that time "not properly billed to one's *client* also are not properly billed to one's *adversary*") (emphasis in original).

For all of these reasons, the Court will deduct 53.1 hours from Mr. Dungan's time; 28.5 hours from Mr. Kilbourne's time; 20.8 hours from Mr. Swords' time; and 9.3 hours of paralegal time as excessive and unreasonable.

### C. Novelty and Difficulty of the Questions Raised

As for the novelty and difficulty of the questions raised, this case involved a scenario which is very common in civil forfeiture cases: a police officer makes a routine traffic stop and develops reasonable suspicion that

criminal activity is afoot. This in turn leads to a search of the vehicle whereby the officer discovers large amounts of cash which the Government contends is proceeds of illicit drug activity. While the Claimants argue that there were a number of novel issues in the case [see Doc. 99 at 12 (discussing Mr. Franklin's lack of criminal convictions, the alleged presence of hemp in the vehicle, the use of the funds to purchase property, and the source of funds "earned in non-traditional commerce")], none of these issues was particularly difficult from a legal perspective. They are little more than a recounting of the evidence in the case that was favorable to the Claimants. Indeed, this case is highly distinguishable from the Hogan matter which the Claimants cite in their brief. Hogan involved claims for substantive and procedural due process violations arising from the systematic deprivation of parental rights by a county social services department, an issue which prior to that case had not been extensively litigated in federal court. See Hogan v. Cherokee Cty., No. 1:18-cv-00096-MR-WCM, 2022 WL 526008, at *7 (W.D.N.C. Feb. 21, 2022). By contrast, this case is essentially a run-of-the-mill civil forfeiture action. Accordingly, the novelty and difficulty of the issues in this case do not weigh in favor of a substantial fee.

### D. Skill Required to Properly Perform the Legal Services

The Claimants that this case required a considerable degree of skill and familiarity with criminal law, civil forfeiture, and complex discovery. Again, this case by and large is a fairly typical civil forfeiture action. Any complexity that arose was primarily the result of Mr. Franklin's questionable income sources. While the matter no doubt required a degree of skill and experience to litigate, the Court finds that one or two highly skilled attorneys, with some staff support, also could have adequately litigated this action to a successful result. This factor, therefore, weighs against awarding the full amount of the fee requested.

### E. Opportunity Costs of Litigation

Under the relevant factors, an "attorneys' opportunity costs include the higher rates they would have otherwise charged in other cases and projects." Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC, 747 F. Supp. 2d 568, 596 (W.D.N.C. 2010). While the Claimants' counsel is correct that this litigation "took more than 3 years from start to finish," [Doc. 99 at 15], a large part of that time resulted from delays in trying the case due to COVID-19 as well as attorney scheduling conflicts and in the Court rendering a final decision following the bench trial. Thus, while three years may have passed from the filing of the Complaint, the attorneys' time during these three years

16

was not consumed with this case.  This factor weighs against a substantial

fee.

**F.    Customary Fee for Similar Work**

As the Fourth Circuit has recognized:

> Determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Robinson v. Equifax Info. Svcs., LLC, 560 F.3d 235, 244 (4th Cir. 2009)

(citing Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)).  In addition to

consideration of specific evidence regarding the prevailing market rate, the

Court may rely upon its own knowledge and experience of the relevant

market in determining a reasonable rate.  See Rum Creek Coal, 31 F.3d at

175 ("The relevant market for determining the prevailing rate is ordinarily the

community in which the court where the action is prosecuted sits.").

17

Here, the Claimants' counsel seeks reimbursement of Mr. Dungan's and Mr. Kilbourne's time at $375.00 per hour; Ms. Farley's and Mr. Swords' time at $275.00 per hour; Ms. Michalove's time at $230.00 per hour; Ms. Pesterfield's time at $150.00 per hour; and the paralegals' time at the rate of $150.00 per hour.

In support of their request, the Claimants' counsel have submitted affidavits from attorneys Wyatt Stevens and Dale Curriden, who are both experienced in litigating complex cases in western North Carolina and who opine that the hourly rates of the Claimants' attorneys are consistent with those in the community for similar services offered by lawyers with comparable skills. [Docs. 100, 101].

Based on the Court's own experience and familiarity with the hourly rates charged in western North Carolina, however, the Court finds that the claimed rates are excessive in relation to the skill required to defend the Claimants' rights in this matter. The Court finds that a rate of $300.00 per hour for the work performed by Mr. Dungan and Mr. Kilbourne is reasonable and in keeping with the prevailing rates in this particular market. As for the associate attorneys, the Court finds that a rate of $225.00 is reasonable and in keeping with the prevailing rates in this area. Finally, the Court finds the

rates claimed for the work of the paralegals in this matter are excessive and should be reduced to $110.00 per hour.

### G. Attorneys' Expectation at Outset of Litigation

The Court finds that this factor does not weigh in favor of or against awarding the full of amount of fees incurred.

### H. Time Limitations

Aside from otherwise expected deadlines of litigation, there were no unusual time limitations imposed by this litigation that would merit any impact either way on the requested award. In fact, some deadlines were adjusted to accommodate counsel.

### I. Experience, Reputation, and Ability of Counsel

Two of the Claimants' attorneys have significant experience in forfeiture cases in federal court. The other four attorneys involved have very little experience in this area. The Court concludes that the hourly rates discussed above adequately reflect the differing degrees of experience, reputation, and ability among the Claimants' counsel.

### J. Undesirability of the Case in the Legal Community

Taking on a civil forfeiture case is a risky economic proposition for a law firm, especially where, as here, there is a relatively low amount in

controversy.[5]   Accordingly, the Court concludes that this case was generally undesirable in the legal community, a factor which weighs in favor of the full lodestar fee.

### K.   Relationship between the Attorneys and Clients

Aside from the customary relationship between the Claimants and their legal counsel, there is not a unique situation or relationship in this case that weighs in favor of or against the requested fee award.

### L.   Fee Awards in Similar Cases

The Claimants have not cited to any civil forfeiture cases with similar fee awards.  Instead, the Claimants simply point out that other courts have awarded fees in the amount of the lodestar.  [Doc. 99 at 24-25].

### M.   Amount Involved and Results Obtained

As noted by the Supreme Court, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained . . . .'" Farrar v. Hobby, 506 U.S. 103, 114 (1992) (quoting Hensley, 461 U.S. at 436).   Here, the Claimants prevailed on their claims in their entirety, which favors awarding a full lodestar fee.

---

[5] Counsel notes that their representation of the Claimants in this case "has been described as quixotic," [Doc. 99 at 23 n.4], a description which the Court finds to be apt.

20

After consideration of all the above factors, and particularly the duplicative and excessive billing, the Court concludes that some reduction in the hours expended by the Claimants' counsel is appropriate. Multiplying those reduced hours by the reasonable hourly rates determined by the Court results in the following lodestar amount:

|  | Hours | Rate | Amount |
|---|---|---|---|
| Dungan | 73.0 | 300.00 | $21,900.00 |
| Kilbourne | 163.9 | 300.00 | 49,170.00 |
| Swords | 135.6 | 225.00 | 30,510.00 |
| Farley | .5 | 225.00 | 112.50 |
| Michalove | 15.0 | 225.00 | 3,375.00 |
| Pesterfield | 5.2 | 225.00 | 1,170.00 |
| Paralegals | 47.9 | 110.00 | 5,269.00 |
| **TOTAL** | | | **$111,506.50** |

For the reasons stated herein, the Court finds and concludes that this lodestar amount constitutes a reasonable attorneys' fee in this matter.

**N.    Costs**

CAFRA provides that the United States is liable for "other litigation costs reasonably incurred by the claimant."   28 U.S.C. § 2465(b)(1)(A).

Here, the Claimants seek $5,156.37 in litigation costs, associated with online research, postage, photocopies, deposition transcript costs, costs to obtain subpoenaed records, service costs, parking fees, and expenses associated with hiring an investigator to serve subpoenas.  The Claimants, however, did not follow this Court's procedure for seeking costs.   See LCvR 54.1 (describing the procedure for filing a bill of costs).  Further, they have not provided any documentation or other justification for the costs that they seek to recover.[6]  As such, the Court  cannot discern whether these claimed costs were "reasonably incurred."   Accordingly, the Court denies the Claimants' request for costs.


# O R D E R

   **IT IS, THEREFORE, ORDERED** that the Claimants' Application for Attorneys' Fees [Doc. 98] is **GRANTED**, and the Claimants are hereby awarded  $111,506.50  in  attorneys'  fees  pursuant  to  28  U.S.C.  § 2465(b)(1)(A).

---

[6] Counsel's claimed costs are interspersed through their 32 pages of billing records.  [Doc. 99-3].  The brief in support of the application for attorneys' fees and costs does not include any discussion about the necessity or reasonableness of these costs.

**IT IS SO ORDERED.**

Signed: March 28, 2023

Martin Reidinger
Chief United States District Judge